**Dorothy B. LOUKS**

v.

**The UNITED STATES.**

No. 246-61.

United States Court of Claims.

June 14, 1968.

———————◆———————

Thomas M. Gittings, Jr., Washington, D. C., attorney of record, for plaintiff. King & King, Washington, D. C., of counsel.

Alfred H. O. Boudreau, Jr., Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

COLLINS, Judge.*

Plaintiff, a former civilian employee of the Air Force, sues to recover her salary from February 11, 1958 (the date of final separation from the Air Force), to the present on the grounds, *inter alia,* that the separation was arbitrary, capricious, and not supported by substantial evidence, and was not in conformance with applicable statutes and administrative regulations. After careful consideration, the court finds that plaintiff is entitled to recover for the reasons herein set forth.

Plaintiff was separated from her GS–11 position with the Air Materiel Command (hereinafter "AMC") for alleged inability to accompany the transfer of her position from Headquarters, AMC, Wright-Patterson Air Force Base, Dayton, Ohio, to the Memphis Air Force Depot.

At the time of her separation and at all times relevant to this action, plaintiff held the position of Budget Administrator in the Budget Division of the Comptroller Department. It was the role of the Comptroller to advise the AMC Commander and to act for him in matters concerning budget, accounting, and statistical reporting. Plaintiff's position involved budgetary and financial control of the Commissary Division, a division of the Air Force Stock Fund. That fund was a revolving fund which financed the acquisition of materiel, mainly food for approximately 240 Air Force commissaries.

In the performance of her duties, plaintiff often worked closely with the Subsistence Branch of the Air Force Services Division. The Services Division, a separate component of the AMC, was also located at Headquarters, AMC,

---

* The court acknowledges the assistance it has received from the report of Trial Commissioner Paul H. McMurray.

but was not within the Comptroller Department. This division was responsible for the general administration and management of the Commissary Division. Part of plaintiff's duties included (1) determining the limitation on the amount of expenditures which could be incurred by the Services Division in the management of the commissaries and (2) providing that division with funds to procure the food necessary to feed the troops.

A management study was conducted in 1957 by Paul Hansford, a management specialist, investigating the advisability of decentralization of the Services Division. Hansford recommended the transfer of three branches of the division, including the Subsistence Branch, to Memphis Air Force Depot, Tennessee. He also recommended the transfer of plaintiff's position because he considered it completely in support of some of the transferred functions. In his view, if the management function of the commissaries (performed by the Subsistence Branch of the Services Division) was being transferred, then the related accounting and budget duties should also be transferred.

Hansford's proposals were eventually adopted by the Commander, AMC. On July 25, 1957, plaintiff attended a meeting conducted by the AMC personnel officer, at which time she was informed of the transfer of functions. Subsequent to the meeting, plaintiff received a letter from the Comptroller, dated July 29, 1957, advising her that several functions, one of which was plaintiff's position, were to be transferred to either the Memphis Air Force Depot or to the Ogden Air Materiel Area. On August 9, 1957, AMC forwarded plaintiff a letter which stated that her position was being transferred to Memphis Air Force Depot and which offered her the opportunity to accompany her position.

On August 26, 1957, plaintiff accepted the offer under protest. On September 11, 1957, plaintiff's counsel submitted a formal request for a grievance hearing, alleging, *inter alia*, that the proposed transfer was invalid and that defendant had been continuously discriminating against her since 1952. Plaintiff's acceptance, under protest, of the offer to transfer was confirmed by the personnel officer, AMC. A Grievance Committee was appointed to consider her claim of improper transfer, and a 2-day hearing was held on October 3–4, 1957.

In the meantime, it was apparent that the decision to transfer the Commissary Division functions to Memphis had not yet been finalized. The Air Force gave some consideration to bases located at Mobile, Alabama, and at Middletown, Pennsylvania. Plaintiff received a letter dated October 21, 1957, advising her that "[s]ince it has been determined that your position will not be functionally transferred to Memphis Air Force Depot, this letter may be considered to cancel your functional transfer to Memphis Air Force Depot." The letter further stated it was expected that her position would be transferred to Middletown, and she would be notified when the decision was finalized.

In December 1957, the Air Force again changed its decision and selected Memphis as the site of the transfer. On December 12, 1957, the personnel officer, AMC, sent plaintiff a letter concerning "Decentralization of Hq AMC Responsibilities to Memphis Air Force Depot."

The letter stated that employees were entitled and encouraged to accompany transferred positions to the new site. Plaintiff was advised that, since the major duties of her position were concerned with the functions transferred, the letter was an offer for her to "transfer with your position of Budget Administrator, GS–560–11, Position Number H4848," and that failure to reply to the letter within 30 days would be considered as declining the offer to transfer.

Plaintiff was also informed that if she could not accept the transfer, "every effort will be made to reassign you at this base to any vacancy which may exist for which you can qualify and are accepted at your present grade or to a lower grade position which you are willing to accept."

She was also advised that, because of personnel reductions, "few vacancies are likely to occur." The letter further stated that if she was unable to transfer and if it was not possible to assign her to a vacancy at Headquarters, AMC, it would be necessary to separate her for "inability to accompany the activity according to the provisions of Part 9 of the Civil Service regulations not earlier than 11 February 1958."

Plaintiff was told that, in the event she declined the transfer offer, she could reply personally or in writing within 30 days of receipt of the letter, setting forth any reasons why the proposed separation action should not be taken.

In reply to a request that he be furnished the final recommendation and decision of the Grievance Committee, plaintiff's counsel received a letter from the chairman of the committee, dated December 16, 1957. The letter stated that release of the recommendation of the committee was not authorized, but plaintiff would be allowed to submit a signed dissent to the portions of the transcript which she considered inaccurate.

In response to the offer to transfer contained in defendant's letter of December 12th, plaintiff's attorney replied by letter dated January 10, 1958, in pertinent part as follows:

    \* \* \* please be advised that the inclusion of the referenced position with a functional transfer to any base or depot subordinate to Headquarters AMC is invalid and improper for the reasons set forth in her grievance letter of 11 September 1957 and the evidence presented at the grievance hearing on 3 and 4 October, 1957.

    \*   \*   \*   \*   \*   \*

    Therefore, until there has been a final determination of the pending grievance, the renewed action against Dorothy B. Louks has the effect of again placing her in the same jeopardy and can only be regarded as harassing tactics which are highly unfair, improper and prejudicial to her rights.

    \*   \*   \*   \*   \*   \*

    The pending grievance and the evidence submitted is the answer of the undersigned to your letter of 12 December 1957 \* \* \*.

Shortly after writing the above reply, plaintiff received from the personnel officer a letter dated January 10, 1958, containing the decision with respect to her first grievance. The letter was received by counsel on January 15, 1958, and by plaintiff on January 20, 1958. The letter stated that cancellation on October 21, 1957, of the original transfer had obviated the necessity for a decision on that grievance, but that a decision on her original grievance was now in order in light of the proposal of December 12, 1957. It was the decision of the Commander, AMC, that plaintiff's position was properly identified and included in the functional transfer to Memphis Air Force Depot, and that a vigorous and conscientious effort would be made to locate, within Headquarters, AMC, a vacant GS–11 position for which plaintiff was qualified.

On January 20, 1958, plaintiff's counsel filed a grievance appeal concerning the new offer to transfer to Memphis. A copy of the original grievance appeal of the first transfer was attached to this letter, and its contents were incorporated by reference as the grounds for requesting the second grievance hearing. In response to this letter, the personnel officer wrote to plaintiff on January 29, 1958, stating that plaintiff would not be denied the right to a second hearing, but, inasmuch as the Commander, AMC, had decided the functional move of plaintiff's position was proper, a second grievance hearing would be a costly and needless step. Nevertheless, plaintiff's counsel, on February 3, 1958, advised defendant of plaintiff's desire for a separate grievance hearing on the December 12th offer of transfer.

On January 31, 1958, plaintiff's counsel wrote the Commander, Headquarters, AMC, requesting that the adverse decision on her first grievance be reveiwed by the Command Grievance Review Com-

mittee. This letter constituted the filing of an appeal to that committee.

On February 11, 1958, plaintiff was separated for alleged inability to transfer with her position. On the same day, plaintiff was sent a separate letter from the personnel officer in which he retracted his former statement that plaintiff would not be denied the right to a second hearing. In that letter the personnel officer stated that her request for a grievance hearing on the December 12th offer to transfer was denied because there were no issues involved which had not been previously considered.

After plaintiff's separation, her former functions were performed at Memphis until a further transfer to Middletown was accomplished in March or April 1958.

On March 10, 1958, plaintiff appealed her separation to the Sixth Regional Office of the Civil Service Commission. On the same day, plaintiff filed a grievance appeal to the Commander, AMC, protesting her separation. Among other things, she contended the separation was improper because she was "not unable to transfer with * * * [her] position, if it is being transferred or if it is being transferred properly."

On March 19, 1958, the personnel officer, replying for the Commander, AMC, to plaintiff's letter of March 10, 1958, refused to grant a grievance appeal. Plaintiff's claim that she was able to transfer with her position was rejected on the ground that she had not indicated her acceptance within the 30 days allowed.

On March 20, 1958, plaintiff's counsel informed the personnel officer that plaintiff had requested a hearing on the validity of her separation, not on the validity of her transfer. The personnel officer responded on May 6, 1958, stating a hearing would be held on May 20, 1958, but that only the circumstances surrounding her separation and other new issues would be heard—the subject of transfer of plaintiff's position would not be considered.

During the hearing, plaintiff denied that she had refused to make the transfer. She testified, in effect, that she was willing to go to Memphis. However, when defendant reinstated the first grievance and indicated it was applicable to the second notice of proposed transfer, plaintiff concluded that that action had reinstated her acceptance, under protest, of the first offer to transfer.

Meanwhile, the AMC's Command Grievance Review Committee had considered the appeal, filed with the committee on January 31, 1958, on plaintiff's original grievance. On May 10, 1958, plaintiff received a letter from the personnel officer, dated May 1, 1958, stating it was the decision of the Commander, AMC, that her position had been properly identified as providing budget support for the Commissary Division of the Air Force Stock Fund and had been properly scheduled for functional transfer to Memphis Air Force Depot. On May 28, 1958, plaintiff appealed this decision to the Secretary of the Air Force. The Secretary, on August 22, 1958, sustained the Commander's decision.

On July 9, 1958, the Sixth Regional Office of the Civil Service Commission issued a decision on plaintiff's appeal from her separation. The Regional Office, noting that its review was limited to a determination of whether there had been compliance with the procedural requirements for effecting a valid separation, upheld her separation. This decision was affirmed by the Civil Service Commission Board of Appeals and Review.

On June 5, 1958, the Grievance Committee, which held the hearing of May 20, 1958, to consider plaintiff's grievance (dated March 10, 1958) concerning her separation, recommended the separation action be upheld. The recommendation of the committee was approved by the Executive, AMC, and plaintiff was notified by letter from the personnel officer, dated June 6, 1958, that it was the decision of the Executive, AMC, that her separation be sustained.

Plaintiff appealed this decision to the Command Grievance Review Committee on June 23, 1958. On August 19, 1958, plaintiff was informed that the Commander, AMC, had determined the decision should be sustained. Plaintiff appealed the Commander's decision to the Secretary of the Air Force, but the Secretary refused to consider it because the only alleged violation of Civil Service regulations had already been considered by the Civil Service Commission.

On December 31, 1959, plaintiff filed a complaint in the United States District Court for the District of Columbia against the Secretary of the Air Force and the Commissioners of the United States Civil Service Commission, seeking, *inter alia*, (1) a declaratory judgment that she had been improperly separated from her position, (2) a mandatory injunction restoring her to her job, and (3) back pay from the date of her separation. On April 18, 1961, counsel for the parties entered into a stipulation that the action in the district court should be dismissed without prejudice to plaintiff's right to assert her petition for back pay in the United States Court of Claims.

The first major contention of plaintiff is that her separation was not accomplished because of her inability to accompany the transfer of her position. She believed it to be the final act in a chain of recriminatory actions taken against her by the Air Force between 1952 and 1958 because she had furnished information of the Senate Armed Services Committee in connection with the so-called "Deep Freeze" investigation.

The several alleged acts of discrimination against plaintiff since 1952 have been carefully considered. It is concluded that whatever occurred between 1952 and 1957 is more or less irrelevant to the instant action. The court finds that plaintiff's separation was in fact effectuated because of a purported failure to accept the offer to transfer and not because of discriminatory action by the Air Force.

The transfer of plaintiff's position was initiated by the management engineer, Paul Hansford, who, at the time he determined that plaintiff's position should be transferred to Memphis, had never met her, had not spoken with her supervisors about her, nor heard anyone speak of her. Hansford's reason for proposing the transfer of plaintiff's position appears to have been based on his opinion that the functions which she performed in the Budget Division supported the management functions of the Subsistence Branch of the Services Division. Therefore, he concluded that her position logically should be transferred along with that branch. The total number of civilian personnel transferred as a result of Hansford's recommendation was 41. Accordingly, no substantial basis in fact is found for plaintiff's contention that the Air Force separated her in retaliation for her testimony before a Senate committee.

■■ Nevertheless, plaintiff is still entitled to recover on other grounds. The court finds that plaintiff was at all times ready, willing, and able to accompany a transfer of her position. The defendant's decision to separate her for failure to do so was arbitrary, capricious, and not supported by substantial evidence. In addition, there is no showing whatsoever that her dismissal was for the good of the service, as permitted by the provisions of 5 U.S.C. § 7501. This court has jurisdiction to redress arbitrary discharges of Government employees. Clark v. United States, 162 Ct. Cl. 477 (1963); Knotts v. United States, 121 F.Supp. 630, 128 Ct.Cl. 489 (1954).

The defendant's contradictory and confusing actions in regard to plaintiff's transfer led plaintiff to believe her first acceptance, under protest, was still in effect, and this belief eventually led to her separation. Under these circumstances, (1) plaintiff's first acceptance, under protest, was all that was required, or (2) if an answer to the second offer was required, her first acceptance, under protest, as supplemented by her letter of

January 10, 1058, constituted a valid and sufficient acceptance of the offer.

As to the first point, although defendant's letter of October 21, 1957, canceled the first offer to transfer, defendant nevertheless (a) rendered a decision on plaintiff's first grievance protesting the first offer to transfer and (b) denied plaintiff's request for a grievance hearing on the second offer to transfer, even though she had been told such a hearing would be granted. Defendant's position in this regard was particularly contradictory and confusing. It treated the two offers to transfer as one operation in determining plaintiff's entitlement to a grievance hearing, but separated them into two operations with respect to plaintiff's obligation to accept or decline the offer to transfer. If, as defendant claims, the second offer to transfer was a totally separate action, requiring a separate reply, then why did defendant render a decision on the grievance protesting the first offer to transfer? If the first offer to transfer was canceled, no decision on it was necessary, and plaintiff was thus entitled to a grievance hearing protesting the new and separate proposed transfer action.

It cannot be doubted that such inconsistency and lack of clarity confused plaintiff. In the first place, a logical reaction by plaintiff to a second notice, asking for a decision on an offer to transfer, might well have been the thought that she had already accepted the offer. But, when defendant indicated that it would issue a decision on the first grievance, the confusion was further increased. Plaintiff could reasonably assume that, if the notice of December 12, 1957, reinstated the grievance on the original offer to transfer and the necessity for a decision thereon, it must have been the same offer to transfer which was being dealt with, and her acceptance, under protest, of that offer must also have been reinstated. While that was not the only conclusion which plaintiff could have reached in considering the correspondence and events surrounding the transfer, it was a reasonable one. Reasonableness is all that is necessary under the circumstances. It was defendant's vacillation and inconsistency which created the confusion.

Secondly, as pointed out above, plaintiff's letter of January 10, 1958, could be construed as an acceptance, under protest, of defendant's proposal. Her answer incorporated by reference the first grievance hearing, and that hearing contained evidence to the effect that plaintiff did accept, under protest, the transfer to Memphis, but contested the validity of the transfer.

Admittedly, the letter is ambiguous, but if defendant had any doubts as to its meaning, the burden was on defendant to determine definitely plaintiff's intentions before separating her for not transferring. Any ambiguity here must be resolved in favor of plaintiff, since it was the defendant's actions which beclouded the situation. Thus, viewing plaintiff's January 10, 1958, letter as an acceptance of the offer to transfer, we can only conclude that the administrative decision to dismiss plaintiff for failure to accompany her transferred position was arbitrary and capricious.

In finding for plaintiff on the above grounds, the court does not disturb defendant's right and discretion to transfer functions or employees, or to effect decentralizations as it sees fit. However, in view of defendant's indecision, bungling, and mishandling of plaintiff's protests and requests for review, justice demands that she recover.

As a result of this finding, we need not consider plaintiff's alternative grounds for recovery—various contentions regarding the legality of the transfer itself and alleged procedural errors in the grievance appeal processes.

For the reasons stated above, it is concluded that plaintiff is entitled to recover, with the amount of recovery to be determined pursuant to Rule 47(c).